UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RONALD M. NELSON, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, <br> Commissioner of Social Security, <br><br> Defendant. | Case No.: C07-1439 CRD <br><br> ORDER RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff Ronald M. Nelson appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") who denied his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA" or the "Act"), 42 U.S.C sections 401-33, and Supplemental Security Income ("SSI") disability benefits under Title XVI of the SSA, 42 U.S.C. sections 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff is a thirty-year-old male, twenty-three years old at the alleged disability onset date. He completed the ninth grade in special education classes and has work experience pressing metal, cashiering, mowing lawns; he also worked for a moving company for several years.

ORDER - 1

Plaintiff applied for SSI and DIB in June 2003, alleging disability since October 2001 due to anxiety disorder and borderline intellectual functioning. His claim was denied initially and upon reconsideration, and he timely requested an ALJ hearing.

A *de novo* hearing before ALJ Verrell Dethloff was held on May 17, 2006. The ALJ heard testimony from two witnesses: a medical expert and Plaintiff, who was represented by counsel, Anne Cook, Esq. Administrative Record ("AR") at 386-408. The ALJ rendered an unfavorable decision on September 29, 2006, finding Plaintiff not disabled. Plaintiff requested review by the Appeals Counsel and review was denied, rendering the ALJ's decision the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 422.210 (2006). On September 19, 2007, Plaintiff initiated this civil action for judicial review of the Commissioner's final decision.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. sections 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. section 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 402 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

///

///

# IV. THE DISABILITY EVALUATION

As the claimant, Mr. Nelson bears the burden of proving that he is disabled within the meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id*. If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] In the present case, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset of the disability. AR at 18, Finding 2. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). In this case the ALJ found Plaintiff has the severe impairments of "anxiety related disorder" and "borderline intellectual functioning." AR at 18, Finding 3. If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or

---

[1] Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R. § 404.1572.

ORDER - 3

equals one of the listings for the required twelve-month duration requirement is disabled. *Id*. In this case the ALJ found that Plaintiff's impairments did not meet or equal the requirements of any listed impairment. AR at 22, Finding 4.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The ALJ in this case determined Plaintiff retained an RFC to perform "simple repetitive tasks with limited public contact" with no exertional limitations. AR at 24, Finding 5. The ALJ next found that Plaintiff could not perform any of his past relevant work. *Id*. at 28, Finding 6.

If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, the burden shifts to the Commissioner at step five to show the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, the claimant is found disabled and benefits may be awarded. In this case, the ALJ found that Plaintiff had only nonexertional limitations and therefore found he could perform work at all exertional levels. AR at 29. Taking into consideration Plaintiff's nonexertional limitations, the ALJ found he could perform "simple repetitive work with limited public contact" which would have "little or no effect on the occupational base of unskilled work at all exertional levels." *Id*. The ALJ therefore concluded Plaintiff was not disabled as defined in the SSA. *Id*.

### V. ISSUES ON APPEAL

Plaintiff presents the following principal issues on appeal:

1. Does additional evidence submitted to the Appeals Counsel warrant remand?
2. Did the ALJ err in evaluating the medical evidence?
3. Did the ALJ err in assessing Plaintiff's credibility?
4. Did the ALJ err in assessing lay witness statements?

ORDER - 4

5.       Did the ALJ err in determining Plaintiff's RFC?

6.       Did the ALJ err by not consulting a vocational expert?

Dkt. No. 13 at 2.

## VI. DISCUSSION

Plaintiff asserts error at nearly every step of the ALJ's analysis. As an initial matter, the Court considers whether the additional evidence of Plaintiff's knee surgery submitted to the Appeals Counsel warrants remand for reevaluation with the new evidence. Dkt. 13 at 17. For reasons discussed below, the Court finds it does not and addresses Plaintiff's other arguments in order. The Appeals Counsel considered the additional evidence and denied Plaintiff's request for review. Although the Appeals Council affirmed the decision of the ALJ, this evidence is part of the record on review to this Court for determination of whether the ALJ's decision is supported by substantial evidence. *See Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996); *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993). Plaintiff asserts the knee surgery report and related documents support his allegations of severe knee impairment. As discussed further below, this Court does not agree. The Court finds the ALJ's decision is supported by substantial evidence and the additional evidence does not undermine the decision. Thus, remand is unwarranted.

    *A.  The ALJ did not err in evaluating the medical evidence.*

        1. Psychological Assessment

Plaintiff asserts the ALJ erred in crediting the opinions of Doctors Lewis, Houck, Chalstrom, and Lewy, over the opinions of Doctors Neims and Coropolongo. Dkt. 13 at 9-12; Dkt. 18 at 2-4. The ALJ found that "[t]he consultative evaluator [Dr. Chalstrom], the medical expert at the hearing [Dr. Lewy], and the state agency medical consultants [Drs. Lewis and Houck] found no more than moderate limitations in the claimant's functioning." AR at 24. Plaintiff asserts that the ALJ erroneously rejected psychological evaluations from examining physicians Dr. Neims and Dr. Corpolongo, who found the more "marked" limitations in four areas and "moderate" limitations in five areas. Dkt. 13 at 10. Plaintiff argues the reasons given by the ALJ for rejecting the opinions were improper in part because Dr. Neims gave Plaintiff

ORDER - 5

consistent evaluations on three occasions and Dr. Corpolongo's opinions paralleled those of Dr. Neims.

To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830 31 (9th Cir.1995); *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Id.* The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes*, 881 F.2d at 751 (internal citations omitted). The rejection of an opinion of a treating physician based in part on the testimony of a nontreating, nonexamining medical advisor may be upheld. *Morgan v. Commissioner*, 169 F.3d 595, 602 (9th Cir. 1999), citing *Magallanes*, 881 F.2d at 751 55; *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).

Dr. Neims and Dr. Coropolongo are nontreating examining physicians; the ALJ considered their opinions and although he did not reject them entirely, he did not accord them "substantial weight," reasoning that: neither are treating sources; they evaluated Plaintiff only for state assistance; and "their opinions regarding the claimant's functioning are not consistent with other medical opinions of record indicating no more than moderate limitations in functioning." AR at 23. The ALJ placed greater weight on the opinions of nonexamining medical consultants, Doctors Lewis and Houck, who reviewed Plaintiff's records and found only "mild" and "moderate" limitations, and on examining psychologist Dr. Chalstrom's diagnosis based on an interview and IQ test, and also on the opinions of Dr. Lewy, the medical expert present at the ALJ hearing. AR at 20-21, 22-23. The ALJ analyzed both Doctor Neims' and Corpolongo's conclusions but disagreed with respect to the level of limitation they found, agreeing instead with the other doctors' conclusions of only mild and moderate limitations. The ALJ found more persuasive Dr. Chalstroms' conclusions, which were set forth in a detailed psychological evaluation, and Dr. Lewy's conclusions, which were based on his observations and questions at the hearing. The ALJ explained:

> Although Drs. Neims and Corpolongo opined that the claimant would have marked limitation in his ability to respond appropriately to the pressures and expectations of a normal work setting, the claimant testified that he worked for four years for a moving company and also enjoyed his work on an assembly line, with no reported problems with work. The record as a whole indicates that the claimant would be able to respond appropriately to pressures, expectations, and changes in a normal work setting, particularly in a setting where he is required to perform no more than simple repetitive tasks and where he has limited contact with public.

AR at 27.

The Court finds no error in the ALJ's reasoning; the reasons given for discounting the opinions of Doctors Neims and Corpolongo, are specific and legitimate, and supported by substantial evidence in the record. Because they are contradicted by other medical opinions, specific and legitimate reasons are all that is required.

Plaintiff also argues that even if the ALJ provided specific and legitimate reasons for rejecting the marked limitations, he did not do so for the five "moderate" opined limitations, arguing that because they were not discussed they must be credited. Dkt. 13 at 12, footnote 4. The Court does not agree. The ALJ clearly stated, "…Dr. Neims and Dr. Coropolongo completed Psychological Evaluation forms for purposes of state assistance, **noting generally moderate limitations** in functioning with marked limitations…[h]owever…their conclusions of marked limitations in functioning are not consistent with other medical opinions of record or the longitudinal record." AR at 27 (emphasis added). That the ALJ did not list which specific categories the doctors found to be moderate is of no moment; the ALJ properly cited to the record and gave specific reasons for discounting the marked and moderate findings. Moreover, the doctors to whom the ALJ gave substantial credit also opined some "moderate" findings. The Court finds the ALJ's assessment is supported by substantial evidence in the record. Thus, the ALJ did not err in this regard.

### 2. Physical Assessment

The ALJ found Plaintiff has no severe physical impairments. AR at 21-22. Plaintiff asserts that his right ankle and right knee problems constitute severe impairments at step two of the disability evaluation, and that the impairments should have been factored into his RFC

ORDER - 7

determination. Dkt. 13 at 17; Dkt. 18 at 8-9. In support, Plaintiff points to a history of problems with his ankle and knee, including evidence of knee surgery one month prior to the ALJ hearing. Plaintiff argues the ALJ did not consider the knee surgery report, which supports a record of severe knee impairment. Plaintiff states that although it was timely submitted, the surgery report was not included in the ALJ's record, but it was thereafter submitted to the Appeals Counsel as "new and material evidence." It is unclear from the record whether the ALJ considered the surgery report. At the hearing, the ALJ discussed the surgery with Plaintiff (AR at 391-92) and had a discussion on the record with Plaintiff's counsel regarding the surgery documentation (AR at 407). The ALJ agreed to leave the record open for 30 days for submission of evidence including the surgery report or other evidence indicating effects of the surgery or knee problems expected to last longer than twelve months[2]. *Id*. At the hearing the ALJ stated, "I never heard of a torn meniscus taking a year to heal, so perhaps you could find out from his doctor why that might be so and I'll hold the record open for 30 days for that and the surgical records." *Id.* Plaintiff's hearing counsel submitted the surgeon's pre and post operative reports detailing the surgical procedures employed. AR at 375-85. The surgery notes indicate Plaintiff had arthroscopic knee surgery with ligament reconstruction, meniscus repair, a partial meniscectomy, and a tendon-bone autograft. AR at 380. However, the notes do not include any comment or opinion on Plaintiff's expected or actual recovery, nor do they include any follow up report. The notes indicate the surgery went well: "[t]he patient tolerated the procedure well, there were no complications, minimal blood loss. Tourniquet time was approximately one hour, 30 minutes. The patient was taken to recovery in stable condition and will be discharged home when fully recovered." AR at 382. There is no further evidence in the record of any treatment or status following the surgery.

In his decision the ALJ noted that:

> The claimant testified at the hearing in May 2006 that he had recently undergone surgery to repair right knee ligament and meniscus tears, and he stated that he was

---

[2] Under Social Security law "disability" is defined as the "…inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months…" 42 U.S.C. section 423(d)(1)(A).

ORDER - 8

>   told that he needed to use crutches for a year. However, the record does not
>   include medical evidence of a knee impairment status post surgery that would
>   require the use of crutches or non-weight bearing status for a year.

AR at 21.

Thus, the ALJ considered the effects of Plaintiff's knee surgery. The ALJ found Plaintiff had "intermittent knee and ankle problems" but concluded the problems did not require work limitations. AR at 25. The ALJ also noted that in 2003 Dr. Staker found limitations in prolonged standing and walking but only recommended temporary assistance. The ALJ concluded that the record does not establish significant limitations that are expected to last at least twelve months. *Id.* Even if the ALJ's record did not include the surgery notes, the notes do not contain any evidence of Plaintiff's status following surgery that suggests a knee impairment expected to last longer than twelve months. Moreover, the notes were also submitted to the Appeals Counsel, which did not find error with the ALJ's decision. Plaintiff argues the fact that he required surgery supports his allegations of severe knee complaints, however, there is no evidence that the knee surgery or associated knee problems are expected to continue, or that the surgery did anything other than improve his knee condition. This Court finds the reasons given by the ALJ for finding Plaintiff's knee problems not severe, such that they would be expected to last longer than twelve months, specific and legitimate, and supported by substantial evidence in the record. Thus, the ALJ also did not err in this regard.

   *B.   The ALJ did not err in assessing Plaintiff's credibility.*

Plaintiff claims that substantial evidence does not support the ALJ's adverse credibility finding. However, this Court finds that the ALJ's detailed analysis sets forth clear and convincing reasons for not fully crediting Plaintiff's complaints. Absent evidence of malingering, the ALJ can only reject Plaintiff's testimony regarding the severity of his symptoms by giving "specific, clear and convincing reasons" for the rejection. *See Lingenfelter*, 504 F.3d at 1036; *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); *Thomas*, 278 F.3d at 958-59.

In finding a claimant's testimony unreliable, an ALJ must render a credibility determination with sufficiently specific findings, supported by substantial evidence. "General

ORDER - 9

findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin*., 119 F.3d 789, 792 (9th Cir. 1997). An ALJ may not discredit a claimant's pain testimony solely on the ground that it is not supported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir. 1989).

Here, the ALJ did not fully credit Plaintiff's assertion of disability and some of his statements concerning "intensity, persistence, and limiting effects of his symptoms." AR at 25. The ALJ provided an extensive analysis of reasons for giving Plaintiff reduced credit, including: the record does not establish significant limitations for a period of at least twelve months; the record indicates he is able to prepare simple meals, do some chores, follow a three-step command; he is able to drive and do some minor car repair; he no longer takes medication for tremors which appears to have contributed to fatigue; at the hearing he stated he was mainly resting due to his recent knee surgery; many of his emergency room records do not document tremors; he has not pursued mental health or further treatment for his tremors; he says he prefers to be alone and has few social interactions but is able to shop when stores are not crowded and enjoys talking with his girlfriend; he claims to be forgetful but tests show memory in the average range, and persistence and pace were evaluated as good; although he may have some difficulty learning, he was able to work in the past and was able to obtain a driver's license; there is a general lack of mental health treatment; he has not participated in ongoing mental health treatment and has not required inpatient mental health care; he does not take medication for anxiety or depression; the record contains possible inconsistencies such as he may not have fully disclosed his history of alcohol and drug use to evaluators, including Dr. Neims; the record

shows a history of daily and continued alcohol use; he testified he drank on special occasions and used cocaine only once but medical records indicate cocaine use over a period of several days, and one doctor noted "chronic" cocaine use. AR at 25-27. Thus, many of the factors an ALJ may consider weigh against Plaintiff. Accordingly, the Court finds that the ALJ determined based on substantial evidence in the record, that Plaintiff's symptoms were less severe than he alleged. The ALJ's credibility assessment is supported by clear and convincing reasons, based on substantial evidence, and is free of legal error. *See Green v. Heckler*, 803 F.2d 528, 532 (9th Cir. 1986) (stating that ALJ's credibility determinations are entitled to great deference); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (stating that ALJ's role is to judge credibility of claimant).

    *C.    The ALJ did not err in assessing lay witness statements.*

Plaintiff asserts that the ALJ failed to properly consider and assess the lay evidence consisting of statements from his mother and sister. Dkt. 13 at 12-13. Plaintiff's mother's statement noted difficulty with his ankle, hand tremors, memory, and that he had anxiety. AR at 147-52. Plaintiff's sister's statement noted similar difficulties and that he slept a lot during the day. AR at 129-37.

Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (internal citations omitted). The ALJ considered the lay statements but did not accord them full credit, explaining:

> "[t]he accuracy of claimant's reports regarding his use, or history of use, of alcohol and drugs is questioned, and it appears that the claimant's family may not be fully informed of circumstances that might affect the claimant's functioning/activities at times. Therefore, the weight accorded to their documentary reports is diminished, although the reports have been considered in the context of the medical records, objective evidence, and the record as a whole."

AR at 22-23.

The ALJ also noted that, "…[t]hird party reports indicate diminished energy, fatigue, and increased sleep due to his impairments and/or medication. However the claimant no longer takes

ORDER - 11

medication for tremors, which appears to have contributed to his fatigue.  At the hearing, the claimant stated that he was mainly resting at that time due to his recent knee surgery." AR at 26. It appears the ALJ gave some weight to the lay statements, especially with respect to the nonexertional limitations.  In assessing his RFC the ALJ found Plaintiff could not perform his past work because it was too complex and required public contact, and thus limited Plaintiff to simple repetitive work with no public contact.  The Court finds the ALJ's decision not to fully credit the lay witness statements based on "germane" reasons; as such, the ALJ did not err in this regard.  *Lewis*, 236 F.3d at 511.

> D.      *The ALJ did not err in determining Plaintiff's residual functional capacity.*

The ALJ found Plaintiff to have the residual functional capacity to "perform simple repetitive tasks with limited public contact.  He has no exertional limitations." AR at 24.  As discussed above, Plaintiff asserts that the ALJ improperly evaluated the medical evidence with respect to his physical and psychological complaints.  Plaintiff argues that the RFC determination was based on improper assessments and was consequently in error.  This Court does not agree.  As discussed above, the Court finds the ALJ did not err in evaluating the medical and psychological evidence that Plaintiff disputes, therefore Plaintiff's residual functional capacity assessment based on that evaluation is not in error.

> E.      *The ALJ was not required to use vocational expert testimony.*

At step five, the ALJ used the Medical-Vocational Guidelines ("guidelines" or "grids") in making the determination that Plaintiff could perform unskilled work involving simple, repetitive tasks with limited public contact, at all exertional levels.  AR at 28-29.  Plaintiff challenges the ALJ's use of the grids without consulting a vocational expert ("VE"), arguing that because the ALJ found him to have nonexertional limitations, VE consultation was required.  Dkt. 13 at 16-17.  Also, as discussed above, Plaintiff maintains that medical evidence was not properly analyzed and that if it were, additional severe limitations would have been found, also mandating VE testimony.  Plaintiff asserts that the "moderate" limitations found by Drs. Lewis and Houck, and the ALJ's resulting limitation to simple repetitive tasks and limited public contact, are "significant limitations" requiring use of a VE under SSR 85-15.

ORDER - 12

"There are two ways for the Commissioner to meet his Step Five burden: (1) the testimony of a VE; or (2) by reference to the Medical-Vocational Guidelines... Where the claimant has significant non-exertional impairments, however, the ALJ cannot rely on the Guidelines." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001) (citations omitted). An ALJ's use of the grids is permissible where the grids "completely and accurately represent a claimant's limitations, such that a claimant is able to perform the full range of jobs in a given category." *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 404.1560(b)(3); Part 404, Subpart P, App. 2, Rule 200(e). "However, the fact that a non-exertional limitation is alleged does not automatically preclude application of the grids. The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." *Tacket*, 180 F.3d at 1102.

Here, the ALJ concluded that:

> …[C]laimant's limitation to simple repetitive work with limited public contact would have little or no effect on the occupational base of unskilled work at all exertional levels. The claimant is able to understand, carry out, and remember simple instructions and tasks on a sustained basis. He also is able to respond appropriately to supervisors and coworkers and deal with changes in a routine work setting on a sustained basis. Although he has some limitations related to interactions with the public, unskilled jobs ordinarily involve dealing with objects rather than people. (SSR 85-15). Therefore, the claimant's limitations to simple repetitive work in a routing work setting with limited public contact would have little effect on the occupational base of unskilled work.

AR at 29.

This Court finds substantial evidence in the record supports the ALJ's conclusion that Plaintiff's nonexertional limitations were not sufficiently severe such that they significantly affect his ability to work. Plaintiff cites no authority in support of his assertion that even "moderate" limitations in some areas or a limitation to simple repetitive tasks and limited public contact equate to significant limitations under SSR 85-15. "[A] vocational expert is required only when there are significant and 'sufficiently severe' non-exertional limitations not accounted for in the grid." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007). Here, there is nothing in the record that suggests a limitation to simple repetitive work with limited public contact would

overtake Plaintiff's ability to perform the unskilled work the ALJ found him capable of performing, or that VE testimony would have changed the ALJ's decision. Accordingly, this Court finds no error of law. Plaintiff's nonexertional impairments are not sufficiently severe to prohibit the ALJ's reliance on the grids without the assistance of a VE.

## VII. CONCLUSION

For the reasons set forth above, the Commissioner's decision is AFFIRMED and the case DISMISSED.

DATED this 19th day of June, 2008.

_Carolyn R. Dimmick_
Carolyn R. Dimmick
United States District Judge